**W. H. SHENNERS CO. v. LAKE WORTH REALTY & BUILDING CO.**

No. 4328.

Circuit Court of Appeals, Seventh Circuit.

Dec. 9, 1930.

Rehearing Denied Jan. 11, 1931.

Edgar L. Wood, of Milwaukee, Wis., for appellant.

Maxwell H. Herriott and Leo Mann, both of Milwaukee, Wis., for appellee.

Before ALSCHULER, SPARKS, and PAGE, Circuit Judges.

PAGE, Circuit Judge.

This is a suit to recover from a Wisconsin corporation money claimed by a Florida corporation to be due for capital stock of the latter. This appeal is from a judgment, on the verdict of a jury in the Eastern District of Wisconsin, in favor of plaintiff.

The contentions of appellant (defendant) here are that: (1) Because a receiver had been appointed for plaintiff in Florida, plaintiff could not maintain this suit; (2) there was no subscription; (3) although a certificate was issued to defendant, it was void because issued before the stock increase, of which it was intended to be a part, was completed, and because the certificate, when issued, was not fully paid for, as required by the laws of Florida; (4) if there was a subscription, it had been canceled by agreement between the parties; (5) defendant could not lawfully obligate itself for or hold stock in another corporation.

Defendant's answer treated the suit as the action of the Florida corporation, and defendant urged before the trial court that the corporation was without power to maintain the suit because, upon the appointment of the receiver in the Florida court, the title to the property passed to the receiver, and therefore the suit should have been brought in the receiver's name. The court, considering the statements of defendant's counsel and the broad terms of the order appointing the receiver, held that it was the receiver's suit and properly brought. Defendant excepted. Defendant is not here raising that question, but is asserting, for the first time, that it is a receiver's suit, and that the receiver cannot maintain a suit outside the jurisdiction of his appointment. That is a dilatory defense that should have been raised by plea or demurrer in the trial court. Lombard v. McMillan, 95 Wis. 627, 70 N. W. 673.

The second point was decided by the jury, as a question of fact, adversely to appellant.

One Boutwell had contracts for the purchase of five parcels of Florida land, aggregating 26 acres. Part of it was mortgaged for $36,000, and the balance, $74,000, was to be paid in cash.

Under its Wisconsin charter, defendant's powers were:

"To own, buy, sell, lease, exchange and deal in lands and real estate; to erect buildings and improvements thereon; to borrow and loan money on real estate and other security, to do a general insurance business, and in general to exercise and perform any and all other powers, necessary, incident or convenient to the business aforesaid."

Practically all of its capital stock was owned by Shenners, its president, and one Borst.

Some time in 1925, Shenners and Boutwell agreed that Shenners should furnish $48,000 and Boutwell $26,000 of the $74,000 cash, and that each $1,000 contributed would entitle the contributor to a one seventy-fourth interest in the venture.

Shenners went back to Milwaukee, and he and Borst induced various persons to join defendant in the venture to the extent of $28,000. That left defendant to pay the remaining $20,000 of the $48,000 interest taken by it. Defendant's associates in Milwaukee paid it all their part of the money, and in October, 1925, defendant paid to Boutwell all that money and $3,000 of its own, leaving $17,000 balance owing from itself.

Some question having arisen about the title to part of the land, known as the Heit piece, upon which $3,000 had been paid, either Borst or Shenners, who had taken a check for $17,000 to Florida to complete the payment of defendant's $48,000, carried it back to Milwaukee because they thought the Milwaukee banks were more secure than those in Florida. When Shenners sent the money to Boutwell, he told Boutwell to take the titles in his own name until they determined whether it was advisable to handle the transaction by a corporation or a trust company.

A corporation was determined on, and in January, 1926, plaintiff was organized under the laws of Florida, with a designated capital stock of $50,000.

March 1, 1926, Boutwell made to plaintiff an offer in writing to sell and transfer, for $57,000 (the amount of money paid to and by Boutwell), all the tracts, except the Heit tract, and the offer was to assign the contract for that. In payment therefor, the corporation was to issue to the several persons named certificates for shares of the corporation's capital stock. One of those designated was "W. H. Shenners Co., 30 shares." All of its associates and all of Boutwell's associates were named.

On the same date, plaintiff's capital stock was increased to $110,000, which was the purchase price of the property.

On March 12th there were issued to the various parties and delivered to Shenners certificates for the several amounts of stock, as designated, except that certificate No. 1 was issued to defendant for 200 shares, instead of the 30 shares designated. Shenners receipted for, and defendant retained, for more than three months, its certificate No. 1. The other certificates were delivered to the persons to whom issued.

Because the certificate of increase was not filed for record until several days after the certificates were issued, and because the certificates issued exceeded $50,000, it is urged that the increase was not then effective, and that there was an overissue of stock. One sufficient answer to those objections is that, when certificate No. 1 was issued for 200 shares, the corporation had a capital stock of $50,000, with power to issue 500 shares. Whether the last certificate issued on March 12th made an overissue, it is not necessary to determine.

In July, 1926, plaintiff's secretary wrote Shenners what his books showed as to the outstanding stock, and that some of Shenners' group owed $18,000. Shenners replied that only $17,000 was unpaid, and further said, concerning the delay in the Heit part of the deal:

"The attorney said it would take sixty days to straighten out the title at least, and when Mr. Borst was leaving for Milwaukee about that time we decided that the money would be safer in Milwaukee banks than in Florida, and he took the check back with him, and we were expecting that within the sixty days they would have their title in shape and the payment could be made, and about two weeks later I was leaving and wanted to get things in shape. We issued all the stock on the Company expecting that this last parcel would be paid for within a few weeks."

That was Shenners' explanation as to why the $17,000 was not paid when the certificates were taken. Plaintiff's secretary replied, explaining several matters, and said:

"Boutwell, at the time he signed the certificates of stock, tells me he was aware that you were to take the money North, * * *. He suggests, however, that in view of the fact that we agreed not to pay any more money on the Heit tract it would be all right for the Company in our judgment to call in $17,000 of stock issued so that the books will show $57,000 of stocks issued which would be a true statement of fact.

"We, of course, think best to leave it to you to see your group of stockholders to de-

termine from them who would want to have their stock reduced and to what extent. You could then mail to me by registered mail the stocks which I would cancel and issue new stock."

Shenners had not told his associates that defendant had used all their money, but had used only $3,000 of its own. Without consulting them, he sent back and had canceled 170 shares of defendant's 200 shares, and gave his associates no opportunity to have any part of theirs canceled.

The claim is that that was a binding agreement for cancellation. Shenners was the treasurer of plaintiff. It needs no authority to support the proposition that such an obligation cannot be so canceled without any consideration passing to the company. Securing the cancellation of that stock was a fraud upon Shenners' associates because of the way in which it was done.

It is also claimed that defendant was to pay the $17,000 only in case the Heit property was taken. There is no support in the record for that contention. If anyone was to be relieved because of the Heit property, all should have been proportionately relieved.

■ It is not necessary to consider the question as to whether a Wisconsin corporation may generally subscribe for or purchase other corporation stocks. Defendant, with full power to do so under its charter, went into a single joint real estate venture in Florida with Boutwell, and obligated itself to pay $48,000 for its interest in the venture. All of that sum, except $17,000, had been paid before plaintiff was incorporated. That $17,000 defendant sent to Florida by Shenners or Borst. There was such delay in perfecting the Heit title that the money was not immediately required, so that the money was carried back to Milwaukee because it was thought the Florida banks were unsafe. The incorporation was wholly Shenners' scheme, and, although the charter showed much broader purposes, the only purpose of having it was to hold and handle the title to the real estate, which was the sole subject-matter of that single joint venture. Shenners had several times told Boutwell and defendant's associates that each $1,000 put into the venture would entitle the investor to a one seventy-fourth part in the venture. The stock was issued on that exact basis. It was not a purchase of corporate shares in another corporation, as such an act is usually understood, but, with a venture already under way, with the obligations already lawfully incurred, the corporation was organized and the shares issued real-

ly as evidence and as a measure of the interest of each contributor of money to the single undertaking.

The judgment is affirmed.